THE CITY OF JOLIET *et al.*

*v.*

CHARLES WERNER.

*Filed at Ottawa April 3, 1897.*

1. BOUNDARIES—*definite monuments will control description in subsequent plat.* Stakes driven in the ground to show the surveyed line of city lots, which were pointed out by the owner to purchasers, are monuments which will control a plat subsequently executed and recorded by such owner, although the latter was mistaken, and the line so pointed out was not the true one.

2. ESTOPPEL—*city may be estopped to change street boundary by acts in pais.* Although limitation statutes do not apply to municipal corporations, yet recognition by a city of an existing boundary between lots and a street, evidenced by constructing a sidewalk and culvert and graveling the street with reference thereto, equitably estops the city to change such boundary as against an owner long in possession, who has built with reference thereto.

3. SAME—*estoppel in pais does not depend on mere lapse of time.* Courts decide the question of an estoppel *in pais* against the public, not by mere lapse of time, but by all the circumstances of the case, as right and justice may require.

APPEAL from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

COLL McNAUGHTON, for appellants:

Before the doctrine of estoppel can be invoked there must have been some positive acts by the municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done. *Roby* v. *Chicago,* 64 Ill. 447; *Railroad Co.* v. *Joliet,* 79 id. 39; *Logan County* v. *Lincoln,* 81 id. 156; *Alton* v. *Illinois Transportation Co.* 12 id. 38.

Where the purchaser of real estate accepts a deed wherein the property purchased is described by lot and block, such purchaser is estopped to deny the lot lines as indicated on the plat or subdivision. *Trustees of Schools* v. *Schroll,* 120 Ill. 509.

Where land is purchased and conveyed as a designated lot in a designated block or subdivision, and no other description is given to it, then the authentic plat to such subdivision is as much a part of a deed as if set out in it, and the purchaser will be restricted to the boundaries of the lot as shown by plat. *Mendel* v. *Whiting,* 142 Ill. 348, and cases cited.

Where the owner of land subdivides the same into lots and blocks and makes a plat thereof, and makes sales of lots with reference to such plat abutting upon what is marked as a street, such owner, and those claiming through him, will be estopped from questioning the existence of the street as shown on the plat. *Earll* v. *Chicago,* 136 Ill. 277.

EGBERT PHELPS, for appellee:

On the question of the location of this boundary by monuments, etc., see *Lull* v. *Chicago,* 68 Ill. 518; *Mt. Carmel* v. *McClintock,* 155 id. 612; *Fisher* v. *Bennehoff,* 121 id. 426; *Bauer* v. *Gottmanhausen,* 65 id. 499; *Railroad Co.* v. *Joliet,* 79 id. 39.

When a city threatens to remove fences of thirty years as an encroachment an injunction will lie. High on Injunction, sec. 584.

City authorities will be enjoined from enforcing an ordinance to appropriate one side of a street so as to deprive the property owner of a sidewalk. High on Injunction, sec. 1247; *Carter* v. *Chicago*, 57 Ill. 283.

A city may be restrained from encroaching on the property of a private citizen, even under pretense of preventing the obstruction of a street. High on Injunction, secs. 1274, 349.

Twenty years' adverse possession of public ground on a street entitles the aid of equity to prevent municipal authorities from interfering. High on Injunction, secs. 349, 1272-1275; *Peoria* v. *Johnston*, 56 Ill. 45.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

This is a bill, filed by appellee as owner of lot 3 and the east half of lot 2 of Joel A. Matteson's subdivision of the north half of block 17 of Bowen's addition to Joliet, for the purpose of enjoining said city and its superintendent of streets from taking any proceedings to move the sidewalk in front of appellee's lots north of the present location of said sidewalk. The bill was answered by the appellants; and a decree was entered in favor of appellee, granting the injunction substantially as prayed for. The present appeal is from the decree so entered.

The question in controversy relates to the location of the north line of Jefferson street, upon which appellee's lots front. The sidewalk in front of the lots is eight feet wide, resting upon a stone wall on the south side thereof, and another stone wall on the north side thereof; under this sidewalk runs a sewer. The stone wall on the north side of the sidewalk was built as far back as 1856 or 1857, and upon the same a fence was at that time erected. It is contended by appellants, that the correct

north line of Jefferson street is eight and three-tenths
feet north of the north line of said sidewalk, while ap-
pellee contends, that the north line of said sidewalk is
the correct north line of Jefferson street; in other words,
the claim of the city is, that the north line of Jefferson
street is about eight feet north of the north line of the
sidewalk, while appellee contends that said strip, eight
feet wide, north of the north line of the sidewalk, is
within his enclosure, and is his property. If the side-
walk were extended north eight and three-tenths feet in
accordance with the contention of the city, it would not
only take a strip of land 6.40 feet wide between the south
line of appellee's house and the north line of the side-
walk, but it would also take nearly two feet off the south
side of appellee's house.

The part of Jefferson street, lying south of the north
half of block 17, runs eastward from Michigan street on
the west to Eastern avenue on the east. In 1853, when
appellee bought lot 3, Jefferson street ran no further
towards the east than Michigan street, and was not then
open from Michigan street to Eastern avenue. In the fall
of 1853, appellee and two other parties, whose interests
he very soon acquired, bought the lots now in contro-
versy from Joel A. Matteson, giving their notes therefor
with the understanding that deeds should be made upon
the payment of the notes. Appellee did not receive his
deed of lot 3 from Matteson until September 19, 1856.
When these lots were bought of Matteson, he had had a
survey made in order to show the south line of the lots
sold by him, or the north line of what was to be Jefferson
street. Upon the line, thus surveyed under Matteson's
order, stakes were set; and, when he sold the lots, he
pointed out to appellee, and the other purchasers, these
stakes as indicating the line to be adopted as the north
line of the street. The line, in which the stakes were
thus set, was located eight feet and three inches south
of what would have been the north line of Jefferson

street, if that part of Jefferson street then existing west of Michigan street had been extended east of Michigan street. The line thus pointed out by Matteson to appellee and the other purchasers, and upon which the stakes had been set by the surveyor, corresponds with the line which is now the north line of the sidewalk in front of appellee's lots. At the time the lots were purchased, the plat of Matteson's subdivision of the north half of block 17 had not been recorded. The plat shows upon its face, that it was made on December 9, 1854, but that it was not acknowledged until the 12th day of March, 1859, and not recorded until March 15, 1859. After the purchase of his lots in the fall of 1853 and in March, 1854, appellee and the other purchasers took possession of their respective lots and began the erection of houses upon them, appellee's house being finished in May or June of 1854. Appellee has lived in the house so erected by him from that time up to the present time, or over forty years before the filing of the bill herein. Not more than two or three years after the building of his house, the stone wall on the north line of the sidewalk was erected, and the fence set up on top of it; and, as we understand the evidence, the eight feet and three inches north of this fence have been enclosed by appellee ever since that time, more than thirty-five years.

The sidewalk in question was built as early as 1854, or 1855. It was originally constructed by appellee, but it was by ordinance accepted by the city, and a sidewalk upon the same line was constructed by the city. The city levied and collected an assessment to pay for that portion of the walk built by its order. The city directed its surveyor to superintend the work of constructing the sidewalk located where the present sidewalk is located. The street between the south side of the sidewalk, as thus originally located, and the north side of the sidewalk on the south side of Jefferson street, has been several times graveled by the city. Some thirty years ago

the city also built a culvert, running from the south side of the sidewalk as thus located to the north side of the sidewalk on the south side of the street.

It is claimed by appellants, that, if that portion of Jefferson street west of Michigan street had been extended or continued eastward to Eastern avenue, so as to make Jefferson street between Michigan street and Eastern avenue a continuation of that part of Jefferson street which was west of Michigan street, the north line of Jefferson street would be eight feet and three inches north of the north line of the present sidewalk, and would have the location claimed for it by the city. It is also claimed by appellants, that their contention as to the location of the north line of Jefferson street is sustained by the plat of Matteson's subdivision of the north half of said block 17. But it is, nevertheless, a fact, that appellee, and the other purchasers named whose interests he now holds, took possession of their lots and built their houses, and built their walls and fences, upon the line pointed out by their grantor, Matteson, who then owned the ground, as being the north line of Jefferson street, and in which the stakes, by which they were guided, were set up by Matteson's surveyor. By the terms of the act then in force: "The plat or map when made out, certified, acknowledged and recorded  *  *  *  shall be deemed in law and equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed." (Gross' Stat. of Ill. 1871, p. 102). If, therefore, the plat of Matteson's subdivision vested in the city the title to Jefferson street according to the location and dimensions of that street as indicated upon the plat, it was only after such plat was acknowledged and recorded. But appellee's interest was acquired, and his possession was taken, and his house, wall and fence were erected, in the manner stated, some six years before the plat was acknowledged and recorded. Even if the surveyor employed by Matteson made a mistake in putting the stakes

eight feet south of the proper line, still such error could not be corrected by the city, more than forty years after appellee so acquired his title and obtained his possession, by forcing the location of the sidewalk eight feet further north to the proper line. Matteson, being the owner of the land, had the right to manage and dispose of it as he saw proper, and had a right to locate the street where he saw proper. The stakes, which were driven in the line pointed out by him and made by his surveyor, were definite and fixed monuments; while a plat, indicating courses, distances and quantities, is but a description or evidence, assisting in determining the monuments.

Where a party lays off lots on his own ground, which are marked by stakes or other visible monuments, and conveys with reference to such boundaries, the grantee will take the same according to the line as actually run and established, although the grantor may have been mistaken as to the correct location of the line. The fact of such mistake affords no reason for changing the boundary established by him in making his conveyance, and such a change would be manifestly unjust where parties have acquired rights extending over a period of more than forty years. Under such circumstances, the location of the street as it was originally made, and as it has been occupied and used for so long a period, cannot be disregarded, and new lines cannot be established. A grantee has a right to the land as located by the grantor. (*Lull* v. *City of Chicago,* 68 Ill. 518; *City of Mt. Carmel* v. *McClintock,* 155 id. 608; *Fisher* v. *Bennehoff,* 121 id. 426).

We are moreover of the opinion, that the city is equitably estopped from tearing up the present sidewalk and erecting it further north, by reason of its acts of recognition of the present location of the sidewalk, as such acts have been above described. Its construction of a sidewalk upon the line of the present sidewalk, its acceptance of the sidewalk already constructed by appellee, the building by it of a culvert up to the present

line of the sidewalk, the graveling by it of the street along the present line of the sidewalk, and its levy of an assessment for the purpose of paying the cost of building the walk as at present located, are such positive acts as work an estoppel. While it cannot be maintained that, as respects public rights, municipal corporations are within ordinary limitation statutes, yet the principle of *estoppel in pais* may be applied to such acts by a municipal corporation as have been above designated. In applying the principle of an *estoppel in pais*, the courts are left to decide the question, not by the mere lapse of time, but by all the circumstances of the case, and to hold the public estopped or not, as right and justice may require. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25; *City of Peoria* v. *Johnston*, 56 id. 45; *City of Mt. Carmel* v. *McClintock, supra; Martel* v. *City of East St. Louis*, 94 id. 67).

"When a municipal corporation threatens to remove plaintiff's fences as an alleged encroachment upon a street, plaintiff having for thirty years been in the undisturbed possession of the premises, the city having used no portion thereof for a street, and offering no compensation to plaintiff, and no means of adjusting his compensation for the property to be taken, an appropriate case is presented for relief by injunction." (High on Injunction, sec. 584). A city may be restrained from encroaching upon the property of a private citizen, even under the pretense of preventing the obstruction of a street. (High on Injunction, secs. 349, 1247, 1272, 1274; *Carter* v. *City of Chicago*, 57 Ill. 283; *City of Peoria* v. *Johnston, supra*).

In view of the considerations herein presented, we are of the opinion, that the decree of the court below, granting a permanent injunction against the removal of the sidewalk north of its present location, was proper.

Accordingly the decree of the circuit court is affirmed.

*Decree affirmed.*