## City of Chicago v. The J. Burton Company.
## Gen. No. 13,785.

1. EQUITY PLEADING—*when allegations of bill of complaint sufficient to sustain injunction.* Held, that the allegations of threatened trespass contained in the bill of complaint in this case were positive and sufficiently certain upon general demurrer to sustain the injunction granted upon the bill.

2. STREETS AND ALLEYS—*ordinance with respect to private use of, construed.* Held, that the ordinance in question in this opinion clearly contemplated the right of the city to permit the private use of space under a public alley.

3. INJUNCTION—*when lies to restrain interference with use of alley.* An injunction lies to restrain a city from interfering with the use by a private party of space beneath a public alley where the right to use such space has been lawfully obtained.

Bill in equity. Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed March 20, 1908.

EDWIN H. CASSELS, WILLIAM D. BARGE and GEORGE W MILLER, for plaintiff in error; EDWARD J. BRUNDAGE, of counsel.

FRED A. BANGS, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The J. Burton Company, defendant in error, filed its bill in equity in the Circuit Court against the city of Chicago and others to enjoin the defendants therein from interfering with the work of excavating for and building a vault under an alley in the city of Chicago. The bill was dismissed as to the other defendants. The city filed a general demurrer to the bill, and on arguments of counsel the demurrer was overruled. Thereupon counsel for the city of Chicago in open court stated that the city would stand and abide by its demurrer. The Circuit Court there-

City of Chicago v. The J. Burton Co.

upon took said bill of complaint as confessed and entered a decree enjoining the city as prayed in the bill. This writ of error is prosecuted to reverse the decree.

The bill represents that The J. Burton Company is a corporation duly organized under the laws of Illinois; that its principal office and place of business is at Nos. 673, 675 and 677 South Centre avenue, Chicago; that it there conducts and carries on a business of manufacturing and selling cotton felt and mattress bats; that it is the owner in fee simple of the premises occupied by it in conducting said business, described as follows, to wit: Lots twenty-one (21), twenty-two (22) and twenty-three (23) in Stewart's subdivision of block nine (9) in Johnson & Lee's subdivision of the southwest quarter of section twenty (20) township thirty-nine (39) north, range fourteen (14) east of the third principal meridian, in the said city of Chicago, in the rear of which premises is a public alley, over and upon which said city has jurisdiction and control.

That on or about the fifth day of February, 1906, the city council of said city duly passed, and the mayor of said city duly signed and the same thereupon became an ordinance or law of said city, an ordinance which is now and from thence hitherto has been in full force and effect, and is in words and figures following, to wit:

"An ordinance concerning the use of Streets and Alleys and the space under sidewalks by private persons.

"*Be it Ordained by the City Council of the City of Chicago*:

"Section 1. No person shall use any space underneath the surface of any street or other public ground in this city, or construct or maintain any structure thereunder without first obtaining a permit so to do from the Commissioner of Public Works of the city. No such permit shall be issued except as hereinafter provided, and no such permit shall be transferred

or assigned, nor shall any right or privilege thereunder be transferred or assigned without the written consent of the Commissioner of Public Works.

"Sec. 2. Applications for such permits shall be in writing, stating specifically the space desired, its length, breadth and depth, the use intended to be made thereof, and the structure to be built therein. No permit shall be issued hereunder for the use of any space under the surface of the roadway of any street or other public ground.

"Sec. 3. Every applicant for such permit shall file with his application his bond in the penal sum of ten thousand dollars, with surety or sureties, to be approved by said Commissioner of Public Works; and such bonds shall be conditioned that the person to whom such permit shall be issued, his heirs, successors and assigns, will save and keep the city free and harmless from any and all loss or damage or claim of damage arising from or out of the use of the space or structure therein mentioned, and for the maintenance of the street, alley or other public way, or the sidewalk over such space, as the case may be, in such condition that said street, alley or public way or the sidewalk shall at all times, after such structure is completed, or such space is covered, be safe for public use, and for the full and complete protection of the city against any and all litigation growing out of the granting of such permit, and for the prompt and full payment of the compensation hereunder required during his ownership of said property so long as said permit shall be outstanding, and for the faithful performance and observance of all the terms and conditions of this ordinance.

"Sec. 4. When the space so used does not extend more than fifteen feet below the surface of the street, alley, way or ground over the same, the person, firm or corporation making, using or maintaining any such structure, or using space underneath the surface of any street, alley, public way or public ground, shall render to the city, as the annual compensation for such use, whenever the adjoining property is subject to general taxation, a sum equal to 4 per cent. of the amount, and provides how this shall be determined.

City of Chicago v. The J. Burton Co.

"Sec. 5. No person shall ever use the space under any such sidewalk in such manner as to interfere with any sewer or water pipe, or any other work lawfully in said street, alley or public way, unless by the consent of the said Commissioner of Public Works, especially granted therefor, and no such permit shall ever be granted until the applicant therefor has paid to said Commissioner of Public Works a sum of money sufficient in his judgment to defray the cost and expense of renewing or rebuilding or relaying such sewer or water pipe or public work and making the necessary connections therewith.

"Sec. 6. If any person now using any space underneath any street, public alley, sidewalk or public way shall fail to take out a permit for such use as herein provided within ninety (90) days after this ordinance is in effect, then the Commissioner of Public Works shall proceed to remove every such structure and close the space therein.

"Sec. 7. Every person using the space under any sidewalk in this city shall at all times keep such sidewalk clear and free from all snow, ice, dirt, filth or other obstructions or incumbrances.

"Sec. 8. Whenever the Commissioner of Public Works shall be of the opinion that the sureties on any bond given for any permit issued thereunder have become insufficient a new bond for such permit shall thereupon be filed with sureties to be approved by the Commissioner of Public Works.

"Sec. 9. If any person obtaining a permit hereunder shall at any time fail or neglect to comply with the terms of this ordinance, then such permit may be revoked by said Commissioner of Public Works.

"Sec. 10. Every person convicted of a violation of this ordinance shall be fined not less than five nor more than twenty-five dollars for each offense.

"Sec. 11. Nothing in this ordinance contained shall be held or construed to apply to any person now using any such space underneath the surface of any street or other public ground according to the terms of any ordinance heretofore passed which requires the payment of compensation for such use if such person is making such payments, nor so long as such payments

are made according to the terms of such ordinances. Nothing in this ordinance contained shall preclude the city from revoking any permit issued hereunder when the space described in such permit is needed for public use.

"Sec. 12.   The Sections 2096, 2098, 2099, 2102 and 2103 of the Revised Municipal Code of Chicago, 1905, be and the same are hereby repealed.

"Sec. 13.   This ordinance shall be in full force and effect from and after its passage and due publication."

Orator represents that being desirous of constructing a building upon a portion of the real estate above designated to be used to transact the business of your orator in and upon and in connection therewith, and being desirous of using the space underneath said alley, applied to said city and obtained from said city a contract for the use thereof, in words and figures following, to-wit:

"PERMIT FOR VAULT UNDER SIDEWALK.
"Department of Public Works,
"CHICAGO, April 12th, 1906.

"In pursuance of the ordinances of the City of Chicago, permission is hereby granted by the Commissioner of Public Works of the City of Chicago to The J. Burton Company to excavate for, construct and maintain a vault underneath the surface of the alley in the street abutting upon the premises known as 673, 675 and 677 South Centre avenue, said vault to be not more than 72 1/6 feet in length, nor more than 16 feet in width, nor more than 15 feet in depth below the grade of the street there, said vault to be used in connection with any building erected or to be erected on lot 21, 22 and 23, Stewart's Sub. of Block 9 in Johnson & Lees Sub. S. W. 1/4 Sec. 20, 39-14.

"This permit is given upon express condition that said vault shall be constructed of the best brick and stone masonry, with a covering of incumbustible material, the same to be supported by iron girders and either iron or brick columns or brick arches; the same to be done in a manner and time required by the

Commissioner of Public Works and in accordance with the plans prepared for said work and approved by said Commissioner.

"It is a further condition that said The J. Burton Company, his agents, executors, administrators and assigns, shall keep and maintain said vault and the space occupied by the same, and the approaches thereto, in good and thorough repairs at all time during the life of this permit, without special notice so to do from the said Commissioner, or any other City officers. The construction, maintenance and repair of said vault shall at all times be at the expense of said The J. Burton Company and without cost to the City. He shall at all times, at his own expense, keep the roadway over said vault in good repair and free from snow, ice and dirt.

"Should the Commissioner of Public Works, for any legal cause, revoke this permit, the said The J. Burton Company, his agents, executors or assigns, shall immediately upon receiving notice of such revocation, vacate said vault and place the same in such condition, by filling, paving or otherwise, as shall be ordered by the said Commissioner.

"Should said The J. Burton Company, or his agents, executors or assigns, fail or neglect to carry out such orders in the time and manner required in such notice, then said Commissioner shall cause the same to be done at the expense of said The J. Burton Company, and any and all expenses incurred or damages paid by the City of Chicago on account thereof shall be borne by the said The J. Burton Company and paid to said City upon demand.

"In construction, maintenance and use of said vault there shall be, at no time, any interference with or damage or obstruction to water pipes, sewers or gas pipes, or any other underground work which is located or which may hereafter be located by said City or authorized by said City in or about said vault, and all persons owning any such underground work or thing for the purpose of doing all necessary work or repair to such underground work or thing.

"The said vault shall not be used at any time for

storing or using, in any manner, any combustible material or any machinery or device of a character hazardous or dangerous to life or property.

"In consideration of the issuing of this permit the said The J. Burton Company shall pay to the City Collector of the City of Chicago a compensation of the rate of Ten and no/100 dollars ($10.00) per year, the first payment to be made as of the date of this permit, and subsequent payments to be made semi-annually on the first of May and November of each year.

"This permit is issued in pursuance of a bond executed by said The J. Burton Company of even date herewith on file in the office of the Commissioner of Public Works, and is subject to all its conditions and the further conditions and restrictions of the ordinances and orders of the City Council which have passed or shall hereafter pass, and also the orders, rules and regulations of the Department of Public Works.

"This permit may be revoked by the Commissioner of Public Works at any time when the said The J. Burton Company or his heirs or assigns shall have failed to comply with the conditions of this permit or with the ordinances of said City. This permit is good for ten (10) years from date.

"WM. L. O'CONNELL, City,
"Commissioner of Public Works.

"The conditions of this permit are hereby accepted and I agree to all the terms and conditions of the same."

---

And thereupon paid to said city the sum of five dollars as provided by the ordinance and by said contract as compensation from the first day of May, 1906, to the thirty-first of October, 1906, and entered into as principal, with sureties, with said city, pursuant to said contract, a bond in words and figures following, which said bond was duly accepted and approved by said city in full compliance with the terms and conditions of said contract requiring said bond, to-wit:

"BOND FOR SPACE UNDERNEATH SIDEWALK.

"KNOW ALL MEN BY THESE PRESENTS:

"That we, The J. Burton Company as principal, and O. M. Burton, and Charles F. Pearce, and Peter Bellan, as sureties, are held and firmly bound unto the City of Chicago in the penal sum of ten thousand ($10,000) dollars, lawful money of the United States, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally, firmly by these presents.

"Witness our hands and seals this 12th day of April, A. D. 1906.

"The condition of the foregoing obligation is such that whereas the said The J. Burton Company has obtained from the City of Chicago a permit authorizing him to construct, maintain and use a vault underneath the alley in rear in South Centre Avenue, abutting upon the building known as 673, 675 and 677 South Centre Avenue. Now if the said The J. Burton Company shall well and truly pay or cause to be paid to said City of Chicago the compensation required by said permit for the use or occupation of said vault, and shall indemnify, save and keep harmless said City from any and all loss, cost, damage, expense or liability of any kind, whatsoever, which the said City may suffer or be put to, or which may accrue against, be charged to, or be recovered from said City by reason of or on account of the use or occupation of such vault, or from or by reason of any act or thing done by said The J. Burton Company in or about or by the use or occupation of said vault, and shall keep the sidewalk over such vault in such condition and repair that it will be safe for use by the public, and in a manner satisfactory to and approved by the Commissioner of Public Works of said City, and shall at all times comply with the ordinances of said City regulating the use of space underneath sidewalks in the streets of said City; then and in that case this obligation shall be null and void; otherwise to be and remain in full force and effect."

That said alleyway runs north and south by and

abutting upon the premises of your orator; that your orator's premises are on the east side thereof, and that on the west side of said alley and abutting thereon is certain property and certain buildings owned respectively by Frank Kupka, F. Bocek and J. Peklo.

That it has now in process of construction a building upon said property, and has commenced to excavate in accordance with said contract, and that said Kupka, Bocek and Peklo have complained to one of the aldermen of said city, and requested that said alderman see to it that the said city stop and prevent your orator from proceeding with said excavation and such work, and prevent your orator from using said space described in said contract; and that said Kupka, Bocek and Peklo have and are now endeavoring to secure the co-operation of said city in and about preventing and deterring your orator from doing such work, and that said Kupka, Bocek and Peklo have threatened by force, if necessary, to prevent your orator from doing such work and using such space in accordance with the terms of said contract; and your orator believes that unless prevented from so doing said Kupka, Bocek and Peklo will stop such work and prevent your orator from doing such work, and from occupying such space, and influence the said authorities of the said city to prevent your orator from doing such work and occupying said space under the terms of said contract.

That since the execution of said contract, it has caused plans to be prepared looking to the construction of said building and occupancy of said space underneath said alleyway in connection with said building, at a great expense, and has in the course of the construction of such building erected a boiler room and boiler in such position, and in such place, that if your orator is unable to occupy and have such space underneath such alley, your orator will be obliged to move and change the said room and boiler and other portions of said building at a great expense, to-wit: more than

twenty-five hundred dollars ($2,500), and that your orator has let all of its contracts for the construction, having in contemplation the space underneath said alleyway, and in consequence thereof all the building material necessary for the construction in such manner has been ordered, including the iron and steel, at an expense of about twelve hundred dollars ($1,200).

That it is willing to and will protect the buildings of said Kupka, Bocek and Peklo, from any and all injury by reason of said excavation.

That upon information and belief said Kupka, Bocek and Peklo have at divers times endeavored to intimidate the workmen employed by your orator on said excavation and about said work, threatening them with violence and with bodily injury if they proceeded with the work of excavating and of building in and under said alley, and that said city, in consequence of the activity of said Kupka, Bocek and Peklo, has threatened to and has taken some steps towards stopping the work of your orator in and under said alley under the terms of said contract; but said city recognizes and states that the said contract of your orator is in full force and effect.

That it is afraid that unless said city, said Kupka, Bocek and Peklo are enjoined by this Honorable Court from carrying out their threats and from interfering with the said work, and from permitting your orator to occupy the said space under and by virtue of the terms of said contract with said city, and that if said injunction is not granted as hereinafter prayed for, they, the said defendants, said city, Kupka, Bocek and Peklo, will carry out their said threats and prevent your orator from so doing such work, occupying such space and having the benefit of said contract.

Your orator further represents that it has in all respects fully and completely complied with all the terms and conditions of said contract on its part to be complied with.

Forasmuch, therefore, as your orator is without

remedy in the premises except in a court of equity, and to the end that said city, Kupka, Bocek and Peklo, who are made parties defendant to this bill, may be required to make answer thereto, but not under oath (their and each of their respective answers under oath being hereby expressly waived) and that they, and each of them, be enjoined from in any manner interfering with or preventing, either by threats or actions, your orator from excavating in said alley, and constructing therein a vault or room, or from using and occupying the said space underneath said alley, as contemplated under and by the terms of said contract, and the said city of Chicago from in an manner revoking, or attempting to revoke, the said contract, and that your orator may have such other and further relief in the premises as to equity may seem meet.

Prayer for injunction against the city, Kupka, Bocek and Peklo, restraining them, and each of them, their and each of their attorneys and agents, from in any manner interfering with or preventing, either by threats or actions, your orator from excavating in said alley, as contemplated under and by the terms of said contract, and said city from in any manner revoking, or attempting to revoke, the said contract until the further order of this court.

It is urged that the only allegations of the bill of complaint in which the defendant in error attempts to show its right to an injunction against the city of Chicago is indefinite and uncertain, and is merely upon information and belief, and that this is entirely insufficient as a basis for the relief prayed.

We think upon general demurrer the allegation of the bill must be regarded as sufficient. The averment is a statement of fact, together with a statement of the sources of information from which a knowledge of the fact is derived, so that the demurrer admits not only that the complainant has been so informed and believes, but that it admits the fact directly charged

that the "city, in consequence of the activity of said Kupka, Bocek and Peklo, has threatened to and has taken some steps toward stopping the work of your orator in and under said alley under the terms of said contract." Coryell v. Klehm, 157 Ill. 462. As said in that case, where a trust was averred upon information and belief, at page 476 of the opinion: "We are inclined to limit, rather than either extend or strictly adhere to, the technical rules of pleading, and especially so in the absence of a special demurrer. If answer had been filed to the bill and issues formed, there can be no question but that complainant might properly have introduced in evidence, under the frame of her bill, a written acknowledgment of trust signed by Bucher prior to his bankruptcy."

In Campbell et al. v. The Paris & D. R. R. Co. et al., 71 Ill. 611, the bill was for an injunction to restrain the supervisor of a township from issuing and the railroad company from receiving bonds of the town. The bill averred "on information and belief that said company will soon demand of the supervisor  *  *  * the bonds  *  *  *  and that there is danger, unless said supervisor is enjoined from issuing said bonds, and the said company is restrained from receiving the same, that said bonds will be issued and registered." In response to the argument of counsel that the bill was defective because the allegation that the railroad company intended to demand and the supervisor intended to issue the bonds was made on information and belief, the court said, quoting from Storey on Equity Pleadings, the claims of a defendant may be stated in general terms, "and if matter essential to the determination of the claims of the plaintiff is charged to rest in the knowledge of the defendant, or must, of necessity, be within the knowledge of the defendant, and is consequently a part of the discovery sought by the bill, a precise allegation thereof is not required." The court held that the averment clearly entitled the complainants to an answer.

The allegation of the bill is positive, we think, that

the city of Chicago has threatened to and has taken steps towards stopping the work of complainant in and under said alley being done under the terms of the contract. This presents sufficient grounds for relief by injunction, if the facts otherwise set out in the bill make an appropriate case for relief in equity. City of Joliet v. Werner, 166 Ill. 34, 41.

As to whether or not the city had taken any steps toward stopping the work of the defendant in error, it was for the city to answer, inasmuch as the knowledge of such steps necessarily rested with it.

The principal question presented by the record is as to the construction of the ordinance set out in the bill, and particularly the last sentence in the second section of the ordinance, which reads as follows: "No permit shall be issued hereunder for the use of any space under the surface of the roadway of any street or other public ground."

It is conceded in argument by counsel for plaintiff in error that the city, in granting the permit and accepting the bond set out in the bill, acted in its private corporate capacity, and not in its public and political or governmental capacity. Gregsten et al. v. City of Chicago, 145 Ill. 451.

It is contended on behalf of the city that the above quoted provision of section two of the ordinance is an express limitation upon the authority of the Commissioner of Public Works to issue a permit for the use of space under the surface of any street or roadway, and that an alley being a public ground and roadway falls within the inhibition of the express terms of the provision. No question is made as to the power of the city under its charter to pass the ordinance.

An ordinance passed by a city council, within the legislative power conferred by the charter, has the same force and effect within the corporate limits as a law passed by the legislature. Hope v. City of Alton, 214 Ill. 102. The rules for the construction of ordinances are the same as those for the construction of statutes. 21 Am. & Eng. Enc. of Law, p. 996 (2nd ed.). And

City of Chicago v. The J. Burton Co.

the meaning of a statute must be sought in the words used. "Courts have no right to suppose that the legislature intended anything different from their natural import. When a statute needs construction, every part of it must be considered, so that the whole may harmonize; for it is never to be presumed that the legislature intended any portion to be without meaning." Way v. Way, 64 Ill. 406.

Another general rule applicable to the construction of statutes is stated as follows by Endlich on the Interpretation of Statutes, sec. 405, quoted in Weber v. City of Chicago, 148 Ill. 313: "When the general word follows particular and specific words of the same nature as itself, it takes its meaning from them, and is presumed to be restricted to the same *genus* as those words; or in other words, as comprehending only things of the same kind as those designated by them; unless of course, there be something to show that a wider sense was intended." This rule is stated In the Matter of Swigert, 119 Ill. 83, at page 88, as follows: "It is a well settled doctrine that in construing statutes, particularly those requiring a strict construction, as in the case here, a general description, like the one in question, following a specific enumeration of objects or things, will be held to include only such things or objects as are of the same kind as those specifically enumerated."

Applying these rules of construction to the ordinance in question, it appears to be a general ordinance regulating the use of space underneath the surface of streets and alleys by private parties. It requires all persons to obtain a permit from the Commissioner of Public Works of the city before using such space and prescribes the manner and the conditions upon which the permit shall be issued. The ordinance clearly contemplates and provides for the use of space under streets and alleys in the city by private persons within the terms and conditions of the ordinance.

Giving proper and due effect to each and all the words and provisions of the ordinance, according to

their common and ordinary use and meaning, it appears clearly, we think, that the words street, alley, and public ground, as used in the ordinance, are not synonymous, and do not mean the same thing. We think they are used advisedly. When the word street is used it does not mean alley, and when the word alley is used it means alley and not a street. And so, in the last sentence of section two of the ordinance, the term roadway of any street does not mean or include roadway of an alley. In other words, the inhibition as to permits made in that section applies to the use of space under the surface of the roadway of any street, and does not apply to the use of space under an alley. The clause "other public ground," following the word street, cannot be interpreted under the rule of *ejusdem generis* to include alleys; and we do not think, considering the whole ordinance, that the city council intended to include alleys in the prohibition under consideration. Our conclusion, therefore, is that the permit was authorized by the ordinance and that the commissioner of public works of the city of Chicago acted within his powers conferred by the ordinance in issuing the permit and taking the bond set out in the bill.

It necessarily follows that the permit construed in connection with the bond in so far as those documents relate to matters not affecting the public use of the alley constitutes a contract between the city and the Burton Company mutually binding upon the parties. The city, in granting the permit and accepting the bond and the compensation provided for in the ordinance, acted in its private capacity, as contra distinguished from its governmental capacity, and is bound by its contract. Gregston v. City of Chicago, *supra.*

From the allegations of the bill it appears that the city is endeavoring to deprive the defendant in error of its rights under its contract, and that a case of appropriate equitable relief is presented.

The decree of the Circuit Court is affirmed.

*Affirmed.*