(Nos. 11466-11467.—Decrees affirmed.)

BESSIE WOLPERT, Appellee, vs. THE CITY OF CHICAGO, Appellant.—RICHARD W. BALDWIN, Appellee, vs. THE CITY OF CHICAGO, Appellant.

·Opinion filed October 23, 1917.

1. BOUNDARIES—owner platting subdivision to city may locate lot lines where he sees fit. The true boundaries of lots in a subdivision are as they are actually run on the ground and marked by the monuments placed by the surveyor who laid out the plat and made the subdivision under the direction of the owner, and purchasers of the lots, and the city, are bound by such location of the lot lines, and streets and alleys therein, although such lines are not coincident with the government survey.

2. SAME—when files of another suit are not admissible. In an action between lot owners and the city involving the location of a street line, the files of another suit between the city and another property owner concerning the same question are not admissible.

3. PLATS—owners of lots may vacate plat without consent of city authorities. Owners of the lots in a platted tract may, subject to statutory restrictions, vacate the plat as to the streets and alleys without the consent of the city authorities.

4. EVIDENCE—facts appearing from public records should be proved by records themselves. Facts appearing from public records should be proved by the records themselves and not by affidavits as to the contents thereof.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (MORTON S. CRESSY, and EMANUEL ELLER, of counsel,) for appellant.

CHARLES L. BARTLETT, SHERMAN C. SPITZER, and ROBERT HUMPHREY, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

These two cases were consolidated in this court and heard on the same briefs. Apparently they were consolidated and heard together in the superior court. Each bill

was filed to restrain the city of Chicago from interfering with appellees in the construction of certain buildings on lots adjoining Western avenue. After hearing, a decree was entered by said court in each case perpetually enjoining the city of Chicago, its officers, agents and employees, from interfering with appellees in any way in the construction of said buildings. From each of these decrees this appeal was prayed.

A statement of the facts in each of the cases will be necessary in order to understand them. Appellees, Bessie Wolpert and Richard W. Baldwin, each owned two lots immediately east of and adjoining Western avenue, Baldwin's being situated about a block north of those owned by Bessie Wolpert. Barbara Portman, being the owner of the west 12 acres of the north 31.21 acres of the northwest quarter of the southwest quarter of section 7, caused the same to be surveyed, subdivided and platted into lots, streets and alleys. The plat was made, executed, certified and acknowledged as required by the statute and was recorded in the recorder's office of Cook county September 19, 1883. Thereafter Clara Becker, having become the owner of lot 3 in said Portman subdivision, caused said lot to be surveyed, subdivided and platted into lots, streets and alleys, and a plat executed, certified and acknowledged as required by statute was recorded in said recorder's office June 16, 1890. On May 12, 1898, Elias Olson and Wilhelmine Eifler, having become owners of lots 6 and 7 in said Becker subdivision, together with all of the other owners of said west 12 acres, executed an instrument duly recorded May 18, 1898, vacating all plats, subdivisions and re-subdivisions of said west 12 acres. On the same day that this vacation instrument was recorded a plat duly executed by Elias Olson, Wilhelmine Eifler and all of the other owners of said property was filed for record in said recorder's office, entitled "Portman's addition to Ravenswood," being a subdivision of said west 12 acres of the north 31.21 acres, again sub-

dividing that part of the said 12 acres south of Foster street and north of Winamac avenue. Thereafter appellee Bessie Wolpert acquired title to lots 6 and 7, in block 3, in said Portman's addition to Ravenswood, free and clear of all incumbrances, liens and easements. No question is made as to her having good title to said lots 6 and 7, the only question being as to where the west or front line of said lots is located. Said lot 7 is 25 feet in width and said lot 6 is 26.9 feet in width, and each lot is 125 feet long and fronts on the east line of Western avenue.

The evidence further tends to show that about May 1, 1916, appellee Bessie Wolpert caused plans and specifications to be submitted to the commissioner of buildings of the city of Chicago for the erection of a building upon said lots 6 and 7, and that said plans and specifications were approved by said commissioner and a written permit issued to her for the erection of such building. The bill represents that thereafter said appellee commenced the construction of said building in accordance with said plans, specifications and permit, entirely on said lots 6 and 7 as surveyed, staked and platted; that about August 2, 1916, after said building had been erected to about six feet above the level of the sidewalk in front of it, said city of Chicago, by and through its employees, notified said appellee to cease work on said building for a distance of six feet east of the west line of said lots 6 and 7 as laid out, staked and platted, and has since said last mentioned date refused, and still refuses, to permit appellee to enter upon said six feet and continue the construction of the building.

The evidence also shows that in 1904 Oscar B. Conklin was the owner of all that part of the west half of the southwest quarter of the northwest quarter of said section 7 lying south of the center of the Bowmanville road, with certain exceptions, and caused the same to be surveyed, subdivided and platted into lots, streets and alleys, the plat being duly acknowledged and certified as required by stat-

ute and filed in said recorder's office November 21, 1904;
that thereafter, on May 17, 1916, there was conveyed to
Richard W. Baldwin and wife the title to lots 59 and 60
in said Conklin's subdivision; that about that time Baldwin
caused plans and specifications to be submitted to the com-
missioner of buildings of said city of Chicago for the erec-
tion of a building on said two lots; that on June 20, 1916,
said commissioner approved the plans and specifications and
issued to Baldwin a permit for the construction of the said
building; that Baldwin, on or about June 18, 1916, com-
menced excavating for the building under a temporary per-
mit, and that on June 20, 1916, the city notified him to
cease work on the excavation for a distance of six feet
east of the west line of said lot 59, and has at all times
since refused to permit him to enter upon and continue the
excavation or construction of such building upon said six
feet. Lots 59 and 60 are each 30 feet in width and about
125 feet in length. Lot 59 is the corner lot, facing south
on Foster avenue, and bounded on the west by the east line
of Western avenue. Lot 60 is located immediately east of
lot 59.

The evidence shows that there were two stones, each
claimed by various persons to mark the northwest corner
of said section 7, one known as the Bradley stone and the
other as the Rossiter stone, and that the surveyor, in sur-
veying and staking said Portman's addition to Ravenswood,
ran a straight line from said Bradley stone to the south-
west corner of said section for the west line of the section,
and then ran a line 33 feet east of and parallel with said
first line for the east line of Western avenue and the west
line of the lots fronting on Western avenue; that the sur-
veyor, in laying out and surveying for the Conklin subdi-
vision, also used the Bradley stone, and not the Rossiter
stone, as a starting point. Appellant apparently contends,
if the argument of its counsel be carried to a logical con-
clusion, that the government surveyor who originally sur-

veyed said section 7 set the quarter section corner stake several feet east of a straight north and south line connecting the two corners of the section, thereby making the west line of said section 7 an angling line, angling from the northwest and southwest corners of the section to a point at the quarter corner (Foster avenue, as shown on the plats,) 6.7 feet or less east of a straight line drawn from section corner to section corner, and that such angling line is the true west line of the section. Counsel for appellees contend that the section line corresponds with the surveys made at the time the said Portman's addition to Ravenswood and Conklin's subdivision were made.

Both counsel in their briefs refer to the government survey, but the record does not show clearly who made that survey. Apparently, from the pleadings, Bradley was a surveyor employed by one of the towns subsequent to the government survey. Rossiter was also a surveyor, who placed the stone called by his name after the placing of the Bradley stone. His son testified at this hearing. We think it is clear that the surveyor who laid out Portman's addition to Ravenswood, and the one who laid out Conklin's subdivision, adopted the stone that Bradley had placed in making his survey as their starting point and made their plats accordingly, and that the surveyor who laid out Portman's addition drove stakes or planted stones at many northwest and southwest corners of the lots fronting on Western avenue, and that these stakes and stones were driven or planted on a line parallel with and 33 feet east of a straight north and south line run from said Bradley stone as the northwest corner of the section to the southwest corner of the section. Somewhat similar testimony was given by the surveyor with reference to driving stakes and planting stones at the corners in the Conklin survey, and the evidence tends to show that some of these original stakes and monuments are still in the ground where they were placed by the surveyors and were later found by other sur-

veyors at the points indicated. Some of these surveyors testified that they found both the Bradley and the Rossiter stones, and that in attempting to run the lines, taking the Rossiter stone as a starting point, they did not find that they fitted in at all accurately with the buildings and fences already constructed; that in taking the Bradley stone as a starting point they found that the surveys fitted the occupancy better, and therefore they used the Bradley stone as a starting point rather than the Rossiter stone.

Counsel for appellant insist that the original Portman survey and plat should control as to the true boundary line on Western avenue. It is clear, however, from the answers filed by the city in these cases that it admitted that said plat, and the later one made by Clara Becker, were vacated and set aside as to both these subdivisions, and, of course, without amending these answers the city is in no position to raise the question that the plats as to these subdivisions were not properly vacated. Counsel for appellant claim, however, that the trial court erred in refusing to permit it to amend its answers. We shall refer to this point later.

There can be no question that the true boundary lines of lots are where they are actually run on the ground and marked by the monuments placed by the surveyor to indicate where they are to be found. Counsel for appellant concede this to be the law as laid down by this court in *Read* v. *Bartlett,* 255 Ill. 76, but seem to insist that there is nothing in the deeds conveying either of these lots, or in the plats, to indicate that they referred to the monuments placed in the ground. The plats introduced in the record as to Portman's addition to Ravenswood show at many points at the corners of lots that stones had been planted at those points. We think the testimony of the surveyors tends to show that some of these stones or stakes were found by them at the points indicated on the plats. The owner of a tract of land has a right to manage and dispose of it as he sees proper, subject to the laws of the State,

and he can subdivide it into lots, streets and alleys and lo-
cate them where he sees fit. The survey fixing the bound-
aries of the lots, streets and alleys is the original work, as
the plat is made from it and intended to be a faithful rep-
resentation of it. The city can only take the title to the
street, as it is surveyed, in trust for the public. The pur-
chasers of the lots in a subdivision, and the city, are bound
by the monuments erected by the surveyor who laid out the
plat and made the subdivision under the direction of the
owner. (*Lull* v. *City of Chicago*, 68 Ill. 518; *City of De-
catur* v. *Niedermeyer*, 168 id. 68.) In the present case the
west line of section 7, as shown on the plats of the two
subdivisions, must be taken to be the west line of the sec-
tion as run by these surveyors, and, under the authorities
just cited, if said west line as run by the government sur-
veyor is not coincident with the line run by these surveyors
that would not in any way lessen the right of the owners
to locate the street and the west line of the survey, so far
as they owned the property, at the point where it was lo-
cated in such plats. The surveyors located the west line
of the west tier of lots in these two subdivisions and set
stakes at the corners of these lots. The owners of the prop-
erty dedicated as a part of the street called Western avenue
only as much land as the dedicators owned west of the
west line of said west tier of lots as fixed and staked on
the ground by the surveyors. It therefore necessarily fol-
lows that the west line of appellees' lots is the west line
as the same was staked by the surveyors who made the re-
spective subdivisions, and we cannot escape the conclusion
from the record that this west line was the line claimed by
appellees as the west line of their respective properties, and
that this was properly so found by the decrees.

It seems to be urged by appellant, indirectly at least, that
the subdivisions could not be vacated by the owners as to
the streets and alleys without the assent of the city authori-
ties. The statute on this question as construed by this court

280 — 13

does not so require. (Hurd's Stat. 1916, chap. 109, sec. 6, p. 1985; *Littler* v. *City of Lincoln*, 106 Ill. 353; *Heppes Co.* v. *City of Chicago*, 260 id. 506.) These decisions hold that under this statute the joint action of the city council of cities or board of trustees of villages is not required to concur with the owner of the premises in so vacating a plat, including the streets and alleys, but that the owners of their own volition, subject to the restrictions and qualifications mentioned in the statute, may vacate the plat or part of plat by their instrument declaring that fact. This vacation seems to have been carried out in accordance with the provisions of the statute, and that fact is conceded in the original answers of appellant.

In May, 1905, the city of Chicago passed an ordinance for cement sidewalks six feet in width on both sides of Western avenue north and south of and adjacent to each of these properties. These sidewalks were thereafter laid by special assessments, assessed and levied in the county court of Cook county. Counsel for appellees claim that the ordinance required that these sidewalks were to be laid parallel to and one foot from the lot lines as platted in the two subdivisions here in question, and that the sidewalks were so laid adjoining these properties on the east side of Western avenue. Counsel for appellant claim that there is no proof in the record that these sidewalks were laid within a foot of the lot lines. It is insisted by counsel for appellees that the assessment ordinance proved that fact, but while the ordinance was apparently introduced it is not a part of the record. There are, however, blue-prints of plats shown in the record that indicate that the cement sidewalk along these properties was constructed only a short distance from the lot line, and, judged by the marks upon these blue-prints, at approximately one foot from said lot line. These blue-prints also tend to show that for several blocks south and north of these properties buildings have been con-

structed and curb-stones put in which apparently conform to the line contended for by appellees on this hearing.

It appears that several years before the institution of these proceedings there was a suit between the city and one Budlong, the owner of property apparently located approximately across Western avenue from appellee Baldwin's property. Appellant offered to introduce the files, including the decree, in the Budlong suit on the hearing, but the court sustained an objection and refused to allow these files in evidence. Apparently, from the briefs, the superior court in that case decided that Budlong's line was some six feet east of where it would be if appellees' contention in this suit be correct as to the proper location of the west line of said section 7. The decree in that case was never appealed from, and therefore may be binding upon the parties to that litigation. Neither of the appellees was a party to the Budlong suit or in any way connected with it. That suit, in the briefs here, is called the McEwen suit, apparently because it was heard by Judge McEwen in the superior court. Counsel for appellant say in their briefs in this case: "It matters not as to whether the evidence and testimony in the McEwen suit is admissible in the suits before this court on this appeal. The question that the two decisions are absolutely in conflict with each other is a fact which this court must recognize." We think this argument is entirely without merit. The record of the McEwen suit is not before us, and we could not, if we would, pass on the merits of that litigation. The city was authorized to have that case reviewed by the higher court but failed to do so. Its failure to so attack the correctness of that decree does not in any way prevent appellees from insisting on their rights in this suit regardless of the finding in the McEwen suit, and the court, in reaching the proper conclusion in this case, can in no way be influenced by the finding in the McEwen suit. It appears from the blue-prints in the record that the city, after that suit, recognized, on the block

in which the Budlong property is located, the finding in the McEwen suit as the proper east boundary line of the lots and constructed the sidewalks on that block accordingly, but the cement sidewalks south of the Budlong property, for several blocks, as appears from these blue-prints, as well as the buildings constructed in the blocks some distance south of the Budlong property, were built in accordance with the surveys contended for by appellees in this litigation.

In this connection it is proper to note that counsel for appellant insist that the trial court erred in not permitting the city to show that after the decree was entered in the McEwen suit, the city, when laying the curb-stones near the Budlong property and paving the street at that point, did conform to the decision in the McEwen suit. The trial court properly refused to admit this testimony, as it could have no bearing on the real issues in this case. The appellees in this suit, as already stated, were in no way made parties to the McEwen litigation and could not be bound thereby.

Counsel for appellees insist that the city of Chicago is estopped by the special assessment proceedings as to the sidewalks from claiming that the location of appellees' front or street line is other or different from that claimed by appellees. The reasoning of this court in *City of Joliet* v. *Werner,* 166 Ill. 34, and *Highway Comrs.* v. *Kinahan,* 240 id. 593, and cases there cited, tends to support appellees' contention in this regard. It is, however, unnecessary for us to discuss the question of estoppel further, as it is clear, on this record, that the appellees' position as to the lot line must be sustained on the basis that their lots were properly subdivided, with their western boundary line as contended for by them, as was found by the decrees in this litigation.

On April 10, 1917, after all the evidence had been heard in this case before the court, appellant filed a motion for leave to amend its answer in the Wolpert case. A motion seems to have been made to amend the answer in the Bald-

win case somewhat earlier. Counsel for appellant insist
that the trial court erred in not permitting them to amend
their answers in accordance with these motions. The affi-
davits in both of these cases in support of these motions set
forth mere conclusions of fact, substantially to the effect
that the affiant, who was one of appellant's solicitors, on
April 5, 1917, in a conversation with one of the witnesses
for the defendants, "first ascertained the fact that the street
known as Western avenue has been laid out by the town
of Lake View and the town of Jefferson as a public high-
way on or about the year 1867, and had been used continu-
ously and uninterruptedly from that time until the present
time as a public highway and public street." The affidavits
do not state whether said street was so laid out in front of
the· properties in question or at some other place, or that
it was laid out by joint action and resolution of the town
boards of the town of Lake View and the town of Jeffer-
son, as then required by statute, or that the records of said
towns show that Western avenue in front of the properties
in question had been laid out, but simply state that someone
had informed the affiant that said road had been laid out.
The affidavits do not state the width of the road claimed
to have been laid out, nor do they show any diligence on
the part of appellant or its solicitors in ascertaining the sup-
posed facts relied upon as a defense in these affidavits. If
the street in question had been laid out by said town boards,
then the proceedings of said boards with reference thereto
must have been recorded in their minutes and records and
by the action of the authorities in annexing said towns to
the city of Chicago would have become a part of the rec-
ords of said city. All of these facts could have been read-
ily ascertained from the records, and the only proper way
of proving these facts would be by the records themselves.
(*People* v. *Board of Supervisors*, 125 Ill. 334.) No facts
were set out in the proposed amended answers, or in the
affidavits in their support, that show, or in any way tend

to show, that the several provisions of the statute were complied with, or even attempted to be complied with, as to the laying out of such road.

Appellant also contends that the trial court erred in refusing to permit it to introduce evidence to show that Western avenue at this point has been traveled for years, and that the city has a right to the disputed ground in question by prescriptive use. In the evidence offered by appellant on this point there was no attempt made to prove that the west six feet of the land here in dispute was ever actually traveled or used by the public as a part of a prescriptive roadway, and there was no evidence offered which in any way tended to show that the six feet in question was ever used or traveled by the public as a highway. Without question, under the reasoning of this court in *City of Chicago* v. *Galt,* 224 Ill. 421, and *Township of Madison* v. *Gallagher,* 159 id. 105, and cases there cited, the evidence on this question offered by appellant was rightly excluded by the court as being insufficient to even attempt to show a prescriptive use of the road over the disputed six feet.

We have tried to give the facts in this record the consideration that the importance of these questions to the public and to the property owners requires, and we can reach no other conclusion than that stated. In the most favorable light to appellant, the only possible claim that can be made here is that the surveyors who made the subdivisions platting the lots here in question did not see fit to take the Rossiter stone as their starting point but took the Bradley stone instead. There is nothing in this record that would justify the court in finding that the Rossiter stone was the correct starting point instead of the Bradley stone. Even if the record plainly showed that the Rossiter stone should have been used, we think, in view of the fact that the owners and surveyors in laying out the Portman addition and the Conklin subdivision laid out and staked Western avenue on the ground itself at this point in accordance with

the Bradley stone, that the decrees of the superior court must be held proper. We think the great weight of the testimony tends to show that the west line of the lots in question, as found by the decrees, conforms much more nearly to the buildings constructed upon the various lots in that vicinity, and the streets and alleys as laid out and occupied, than it would by taking the Rossiter stone as the starting point.

We find no error in the record. The decrees of the superior court will therefore be affirmed.

*Decrees affirmed.*